# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 8746 | **DATE** | 3/28/2001 |
| **CASE TITLE** | Finnsugar Bioproducts, Inc. vs. Amalgamated Sugar Company and the Amalgamated Research, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum and Opinion, the defendants' motion [Doc. No. 83] for partial summary judgment on the basis that the '398 patent violates the "on sale" bar of the Patent Act, 35 U.S.C. § 102(b), is hereby GRANTED. the defendants' additional motions [Doc. Nos. 84, 85] before this court are moot. Status hearing set for April 16, 2001 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAR 2 8 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 129 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| vg(lc) | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Finnsugar Bioproducts, Inc., an Illinois Corporation, <br><br> Plaintiff, <br><br> v. <br><br> The Amalgamated Sugar Company, LLC, and Idaho corporation; and Amalgamated Research, Inc., an Idaho corporation, <br><br> Defendants. | No. 97 C 8746 <br><br> HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Before this court is defendants', Amalgamated Sugar Company, LLC, and the Amalgamated Research Inc. (collectively "ASC" or "defendants"), motion for summary judgment of invalidity of plaintiff's, Finnsugar Bioproducts, Inc.( "Finnsugar" or "plaintiff") U.S. Patent No. 5,795,398 ("the '398 patent"). The defendants contend that the '398 patent is invalid for the following reasons: (1) the patent violates the "on sale bar" of the Patent Act, 35 U.S.C. § 102(b); (2) the patent and the asserted claims 1,14 (and the dependant claims 7,9-13) violate 35 U.S.C. § 112 of the Patent Act and are invalid due to either indefiniteness or omission of an "essential" element; (3) the patent and asserted claims 1, 14 (and the dependant claims, 7, 9-13) violated 35 U.S.C. § 103 and are invalid for obviousness. For the following reasons, the defendant's motion for partial summary judgment on the basis that the '398 patent violate the "on sale" bar of the Patent Act is hereby GRANTED. The defendants' additional motions before this court are moot.

## Statement of Facts

In 1989, Finnsugar and Southern Minnesota Beet Sugar Cooperative ("SMSC") entered into a contract ("the 1989 Contract) under which Finnsugar supplied SMSC with the technology to practice a three-fraction separation process of U.S. sugar beet, disclosed in a previous patent, ("'957 patent"). That process produces a sugar fraction, a betaine fraction, and a "rest molasses" fraction. (Plf's LR 56.1(b)(3) Resp. to § 102(b), ¶¶ 1-2.)

Finnsugar provided SMSC with specifications for the process. SMSC was responsible for building the plant. SMSC purchased evaporators that were too small to maintain the process continuously at the level of performance that was guaranteed in the 1989 Contract. (Plf's LR 56.1(b)(3) Resp. on § 102(b), ¶4.)

On December 14, 1992, Finnsugar and SMSC entered into an "Acceptance Agreement," which recited that the guarantees had not been satisfied, and which provided for a Joint Research Project "to enhance and improve the separation technology at the Plant." (Plf's LR 56.1(b)(3) Resp. on § 102(b), ¶9.) The stated objective was to "find improvements related to the process in order to improve the profitability level of the plant in normal operation." The activities were to take place "for a period of one year" and were to "be completed no later than March 15, 1994." (DTX 59.) The Joint Research Project was to be headed by one SMSC scientist, Jean-Pierre Monclin ("Monclin"), and one Finnsugar scientist, Goran Hyoky ("Hyoky"). SMSC's main concern was increasing sucrose purity. ( Plf's LR 56.1(b)(3) Resp. on § 102(b), ¶¶13-15.)

On March 23, 1993 inventor Hyoky generated a "process flow scheme and material balance for separation of betaine at Renville" stating "Finnsugar Engineering is preparing a proposal for installing this process." (Plf's LR 56.1(b)(3) Resp. on § 102(b), ¶ 24.) Inventors

Hyoky and Kaj-Erik Monten ("Monten") met with SMSC president, Irvin Zitterkopf ("Zitterkopf"), on April 14, 1993. (DTX 66) (Plf's LR 56.1(b)(3) Resp. on §102(b), ¶ 25). During the April 1993 meeting, the inventors discussed with Zitterkopf a diagram called "Enclosure 2." (Monten Dep. 179.) SMSC's Zitterkopf testified that he understood Enclosure 2 to be a proposal to implement a two stage separation process commercially at the Renville plant. (Zitterkopf Dep. 62-63.) As a result of that meeting, an 8 month study of the economics and details of the matters discussed was initiated.

By September 1993, inventor Hyoky concluded that a particular configuration for betaine upgrading, called "M9B3," was the "most promising alternative" to use at Renville. (DTX 71) (Plf's LR 56.1(b)(3) Resp. on § 102(b), ¶ 41). The M9B3 process developed into the '398 patent. (Hyoky Dep. 93-94, 206-208; Zitterkopf Dep. 79-81.)[1]

Finnsugar undertook additional studies for implementing the M9B3 process at Renville. A December 1993 Report, summarizing the results, was sent to Renville. Each element of claims 1, 7, and 9-14 "of the '398 patent is found in the M9B3 configuration depicted in the diagram in the Joint Research Report." (Defs.'LR 56(a)(3) SOF on § 102(b) ¶¶ 56-62.) Finnsugar does not dispute that "the process described in the December 1993 Report was the very same one set forth in Example 3 of the '398 patent." (Plf's LR 56.1(b)(3) Resp. on § 102(b), ¶ 48.)

Finnsugar sent a Proposed Amendment to the Finnsugar/SMSC Contract to SMSC on December 9, 1993. The Proposed Amendment contemplated the installation of "Improvements"

---

[1] Finnsugar denies that the M9B3 configuration was incorporated by the '398 patent. Finnsugar, however, fails to dispute the deposition testimony of either Hyoky or Zitterkopf. Additionally, it offers to expert testimony contradicting facts established by Cleary's declaration (Cleary Decl. at 5-6).

3

to the SMSC facility (Plf's LR 56.1 (b)(3) Resp. on § 102 (b), ¶ 45.) The Proposed Amendment contemplated that SMSC would deliver to Finnsugar a betaine fraction produced after the installation of the Improvements that was of a higher quality than the plant was producing without the installation so Improvements. (Plf's LR 56.1 (b)(3) Resp. on § 102 (b), ¶ 45.)

In January 1994, inventor Hyoky and SMSC engineer Monclin completed a final Joint Research Report. SMSC received a copy of the Report. Finnsugar admits that the January Report concluded by stating that: "we recommend that an investment is made that can handle both," the high-capacity system and the M9B3 system. (See Plf's LR 56.1(b)(3) Resp. on § 102(b), ¶ 53.)

In addition, the January Report states that "the economy of the [Renville] molasses plant can be considerably increased in two ways," one of which was to implement the "M9B3" configuration to produce an 85% pure betaine fraction. (DTX 75, at F36633, F36641; see also Zitterkopf Dep. 91-92; Monten Dep. 209-11, 215-20.) The January Report attached "detailed technical and feasibility calculations, and descriptive graphs," concerning the M9B3 proposal, and a flow chart describing the M9B3 method. (DTX 75, at F36641-42.) The Report projected an investment cost of $4.6 million and a payback time of 1.9 years for the M9B3 proposal. (Defs' Objections to Plf's LR 56.1(b)(3) Resp. on § 102(b), ¶ 52.)

An expert witness on behalf of the defendants, Dr. Michael Cleary ("Cleary") testified that "the process [in the January Report] is directed to separating components from beet molasses, which is represented by the 'M' and a box describing its composition as 61% sucrose and 5.0% betaine." (Id.) The 'M' is in "M9B3" and in "INC MOL," which is right above the box in the diagram showing the 61% sucrose/5.0% betaine composition to which Cleary refers. (DTX 75, at

4

F36641.)

The January Report states that the proposed M9B3 process is for "[r]egrouping the present columns to include nine [hence the "M9"] for molasses separation . . ." (DTX 75, at F36633); id. at F36619 ("the molasses plant"). Hyoky acknowledges that the 1/21/94 diagram shows that "the M9B3 configuration is using nine of the columns at Renville for molasses separation." (Hyoky Dep. 215-16.)

Finnsugar filed a patent application for the '398 patent on June 7, 1995. (DTX 104.) The defendants bring before this court a motion for partial summary judgment seeking invalidity of the '398 patent.

## Legal Standard

Summary judgment may only be granted when no material question of fact is in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252, 106 S.Ct. 2505, 2511-12 (1986). The party moving for summary judgment bears the burden of identifying the evidence that demonstrates the absence of a disputed material issue of fact and establishes that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53 (1986). The evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved and all reasonable inferences drawn in favor of the nonmoving party. Anderson, 477 U.S. at 2513. Further, "the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial level on the merits." Anderson, 477 U.S. at 2512.

Patent invalidity must be proven by clear and convincing evidence. Tec Air, Inc. v.

Denso Mafg. Michigan Inc., 192 F.3d 1353, 1358 (Fed. Cir. 1999); Envirotech Corp. v. Westech Engineering Inc., 904 F.2d 1571, 1574 (Fed. Cir. 1990). "Clear and convincing evidence has been described as evidence which proves in the mind of the trier of fact 'an abiding conviction that the truth of [the] factual contentions are [sic] 'highly probable.'"" Intel Corp. v. U.S. Intern. Trade Comm'n, 946 F.2d 821, 830 (Fed. Cir. 1991) (quoting Colorado v. New Mexico, 467 U.S. 310, 316 (1984)).

Under 35 U.S.C. § 282, a patent is presumed valid and one challenging its validity bears the burden of proving invalidity by clear and convincing evidence. Innovative Scuba Concepts, Inc. v. Feder Indus., Inc., 26 F.3d 1112, 1115 (Fed.Cir.1994); Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed.Cir.1986). While a patentee has the burden of going forward with rebuttal evidence once a challenger has presented a prima facie case of invalidity, the presumption of validity remains intact and the ultimate burden of proving invalidity remains with the challenger throughout the litigation. Id.

**Analysis**

A. The "On Sale" Bar Claim

The defendants contend that the '398 patent violates the "on sale" bar of the Patent Act, 35 U.S.C. § 102(b), and is therefore invalid. This court agrees.

Section 102(b) of the Patent Act of 1952 provides that no person is entitled to patent an "invention" that has been "on sale" more than one year before filing a patent application.[2] Pfaff v.

---

[2]"A person shall be entitled to a patent unless--

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of

Wells Electronics, Inc., 525 U.S. 55, 56 (1998). The "on sale" question "is ultimately a conclusion of law [and] review[ed] de novo, although it is based on underlying facts." Evans Cooling Sys. v GM Corp., 125 F.3d 1448, 1450 (Fed. Cir. 1997).

The two part test for determining whether the on sale bar applies, was recently articulated by the Supreme Court in Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 61 (1998), provides:

> "First, the product must be the subject of a commercial offer for sale.
>
> * * *
>
> Second, the invention must be ready for patenting. That condition may be satisfied in at least two ways: [a] by proof of reduction to practice before the critical date; or [b] by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."[3]

The defendant argues that Finnsugar's proposals meet both parts of this test. This court agrees.

1. Subject of commercial offer for sale

For a process patent, such as the '398 patent, the "commercial offer for sale" requirement is satisfied by "offering" for sale the process itself. D.L. Auld Co. v. Chroma Graphics Corp., 714 F.2d 1144, 1148 (Fed. Cir. 1983); Scaltech, Inc. v. Retec/Tetra L.L.C., 178 F.3d 1378 (Fed. Cir.1999) ("if the process offered for sale, in its normal use, inherently satisfied each claim limitation...the offer creates a §102(b) bar"). Proposing to commercially implement a process can qualify as offering the process "for sale." E.g., id.

---

the application for patent in the United States, or ...." 35 U.S.C. S 102.

[3]Also, the subject of the sale or offer must "fully anticipate the claimed invention or would have rendered the claimed invention obvious by its addition to the prior art. Ferag AG v. Quipp, 45 F.3d 1562, 1566 (Fed Cir. 1995).

7

It is not necessary for such a proposal to rise to the level of a formal "offer" under contract law to trigger the on sale bar. RCA Corp. v. Data General Corp., 887 F.2d 1056, 1062 (Fed. Cir. 1989) (on sale bar "may be met by a patentee's commercial activity which does not rise to the level of a formal 'offer' under contract law principles"). A single offer to sell is sufficient to trigger the "on sale" bar. In re Caveney, 761 F.2d 671, 675 (Fed. Cir. 1985). An offer invokes the bar "whether the offer is accepted or rejected." UMC Elec. Co. v. United States, 816 F.2d 647, 653 (Fed. Cir. 1987) (several citations).

The defendants suggest that the present case is very similar to the facts of RCA and therefore demand a similar outcome. In that case, RCA submitted a proposal to the Federal Aviation Commission that included a schematic diagram of a process that was later patented. RCA, 887 F.2d at 1060. The Federal Circuit concluded that RCA's proposal triggered the on sale bar: "RCA's bid was embodied in a lengthy written proposal providing background information, a detailed delivery schedule, a rate of completion of the proposed work, and a separate section on financial data and costs." RCA, 887 F.2d at 1062.

This court, however, agrees with the plaintiff that the issue in RCA was not whether RCA's bid proposal was an offer for sale, but rather, whether the invention was covered by patent was the subject of RCA's bid. In this case, the question is whether or not Finnsugar's communications with SMSC, which all occurred before the critical date June 7, 1994, regarding the M9B3 process constitute an "offer for commercial sale" so as to invalidate the '398 patent under the "no sale" bar.

As the plaintiffs point out, the facts in this case do not reveal any explicit offers by Finnsugar to "sell" either the '398 patent or the M9B3 process to SMSC. The law, however, is

8

clear: it is not necessary for a proposal to rise to the level of a formal "offer" under contract law to trigger the on sale bar. RCA Corp. v. Data General Corp., 887 F.2d at 1062. The transaction at issue undisputedly was a "sale" in a commercial law sense. In this case, Finnsugar offered to install the M9B3 process at SMSC's Renville plant, prior to the critical date, in order to increase commercial prospects for itself as well as SMSC. "It is well settled that a sale is a contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold." In re Caveney, 761 F.2d 671, 676 (Fed.Cir.1985).

The plaintiffs argue that the meetings between Finnsugar and SMSC were simply discussions about the development joint research project, "the purpose of which was to improve the performance of the SMSC plant,"[4] not to present any offers for the sale. Towards such an end, Finnsugar and SMSC entered into an "Acceptance Agreement" dated December 14, 1992 (DTX 59) in which they agreed "to conduct joint research activities to enhance and improve the separation technology at the Plant." The stated objective was to "find improvements related to the process in order to improve the profitability level of the plant in normal operation." The activities were to take place "for a period of one year" and were to "be completed no later than March 15, 1994." (DTX 59.)

Finnsugar asserts that their intention to conduct a joint development research project with

---

[4]Plaintiff states that when Finnsugar signed a contract with SMSC in 1989, the parties agreed that the sucrose yield was guaranteed by Finnsugar to be a minimum of 84%, and the sucrose purity was guaranteed to be a minimum of 90%. Therefore, the development of the communications between the two parties was simply an effort to "get the plant running the way it was originally proposed." Zitterkopf Dep. 20-22.

SMSC insulates their actions from being considered a sale under § 102(b). Even if true, the plaintiff's argument fails because both the Supreme Court and the Federal Circuit have rejected the "experimental stage" doctrine, whereby a patentee may avoid invalidity under the on sale bar by coming forward with evidence that its use of invention was experimental, where the commercial exploitation was not incidental to the primary purpose of experimentation. City of Elizabeth v. American Nicholson Pavement Co., 97 U.S. (7 Otto) 126, 24 L.Ed. 1000 (1877); Scaltech v. Retec/Tetra L.L.C., 178 F.3d 1378 (Fed. Cir. 1999); Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182, 1185, 25 USPQ2d 1561, 1563 (Fed.Cir.1993). This court sees no reason to establish a new exception based on the alleged fact that the plaintiff and SMSC were joint developers and as such a sale between the two of them should not be considered a 102(b) sale. Braessler, U.S.A. I, L.P. v. Stryker Sales Corp., 182 F.3d 888, 889-890 (Fed. Cir. 1999)(holding that on sale bar applied where patent was developed by joint developers but existed as separate corporate entities).

The plaintiff directs this court to the decisions in Continental Can Co. USA v. Monsanto Co., Hoover Universal, Inc., 948 F.2d 1264, 1269 (Fed. Cir. 1991) and Mass-Hamilton Group v. LaGard, Inc., 156 F.3d 1206, 1217 (Fed Cir. 1988). In Continental Can and Mass-Hamilton, the Federal Circuit, used a "totality of the circumstances" test to find that "the 'on sale' bar of 102(b) does not arise simply because the intended customer was participating in development and testing." 948 F.2d 1269. This rationale, however, was rejected byt Supreme Court in Pfaff v. Wells Electronics, 525 U.S. 55 (1998). In Pfaff, the Supreme Court replaced the old "totality of the circumstances" test that had been used to decide § 102(b) issues with a new two-part test: (1) whether the invention "was the subject of a commercial offer for sale" and (2) whether it was

"ready for patenting" before the critical date. Pfaff, 525 U.S. 55, 62 (1998).

Post-Pfaff, the Federal Circuit in Braessler stated that "[s]ince the Pfaff decision, this court has held a patent invalid for violation of the on-sale bar based on the 'the Supreme Court's two-part test [enunciated in Pfaff] without balancing various policies according to the totality of the circumstances as may have been done in the past.'" 182 F.3d 888, 889 (quoting Weatherchem Corp. v. J.L. Clark, Inc., 163 F.3d 1326, 1333 (Fed. Cir. 1988)). Consequently, the plaintiff's reliance on the analysis of Continental Can is unhelpful in this case.

In the Mass-Hamilton, the primary issue before the Federal Circuit court was whether the "seller" was merely a potential licensee of legal rights, or, rather, a potential customer of devices. The district court found that seller was only a potential licensee. Mass-Hamilton, 156 F.3d.at 1210. Upon examining the record, the Federal Circuit could not discern clear error in the district court's finding that there was not a definite sale or offer for sale of the locks later claimed in the patent, and therefore the Court affirmed the district court's conclusion that patent at issue was not invalid based on the on-sale bar. For several reasons, however, this case does not operate to support Finnsugar's position.

First, as the defendants' point out, the Mas-Hamilton decision issued two months before the Supreme Court's decision in Pfaff. The Court employed a "totality of circumstances" analysis and therefore the precedential value of the reasoning is limited. Second, the facts in Mas-Hamilton are not specifically instructive in the instant case. In that case, there was an express finding by the district court that the meeting between the patentees and the manufacturer concerned involved negotiations over protections rights in the invention or the right to market the device to the government. Mas-Hamilton, 156 F.3d at 1217. Those offers were not offers to sell

11

the potential invention but rather were negotiations over the rights in the potential invention. In this case, Finnsugar offered to install the MB393 process at SMSC in order to gain a return.

Finally, Finnsugar's argument that the proposals did not qualify as an on sale bar because they were allegedly "secret" is unsuccessful. The Federal Circuit in Braessler explicitly "rejected the argument that sales activity kept secret from the trade does not trigger the on-sale bar." 182 F.3d at 891.

For the foregoing reasons, the defendant has proven by clear and convincing evidence that proposals made by Finnsugar to install the M9B3 process at the SMSC Renville plant, before the critical date June 7, 1994, qualify as commercial offers for sale under the § 102 (b).

2. Ready for Patenting

The defendant argues that at the time of Finnsugar's proposals to SMSC, prior to the critical date, the '398 patent was "ready for patenting" and embodied in the M39B3 process. This court agrees.

The second part of the "on sale" bar test examines whether the invention offered for commercialization was "ready for patenting" prior to the critical date. This element may be met by showing either: (1) that the invention was "reduced to practice," or (2) that the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention. Pfaff, 119 S.Ct. at 312. A process is reduced to practice "when [the process] is successfully performed." Id. at 307 n.2.

Inventor Hyoky has testified that example 3 of the '398 patent was successfully performed in December 1993. Finnsugar does not dispute this fact, but rather argues that examples 5 and 6 of the '398 patent were not completed until after its communications with

12

SMSC. Finnsugar does not provide, however, any support for its argument that all examples of a patent must be accomplished to render an invention "ready for patenting." The law does not require that any examples be provided in a specification or that "a patent applicant test all the embodiments of his invention." Amgen, Inc. v. Chugai Pharm. Co., Ltd., 927 F.2d 1200, 1213 (Fed. Cir. 1991). Consequently, the defendants have provided clear and convincing evidence that the '398 patent had been successfully performed and therefore reduced to practice in December 1993, making the patent ready for patenting prior to the critical date.

There is no genuine issue of material fact regarding whether the '398 patent was reduced to practice before June 7, 1994. Therefore, the defendants have proven by clear and convincing evidence that Finnsugar's negotiations with SMSC regarding the '398 patent qualify and commercial offers for the sale of a process that had been reduced to practice before the critical date.

## Conclusion

The defendants' motion for partial summary judgment on the basis that the '398 patent violates the "on sale" bar of the Patent Act, 35 U.S.C. § 102(b), is hereby GRANTED. The defendants' additional motions before this court are moot.

**Enter:**

_David H. Coar_

**David H. Coar**

**United States District Judge**

Dated: **MAR 28 2001**

13